UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUZANNE HINDS WANVIG, )<br>    Plaintiff, )<br> ) | Civil Action No. 3:10-cv-00916 |
| v. ) | Judge Wiseman/Brown |
| )<br>MICHAEL ASTRUE, )<br>Commissioner of Social Security, )<br>    Defendant. ) | |

To:    The Honorable Thomas Wiseman, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits (DIB), as provided under Title II of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 15, 20). The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 10). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **GRANTED in part** and the action be remanded for rehearing pursuant to 42 U.S.C. § 405(g).

## I. INTRODUCTION

Plaintiff filed an application for DIB on August 1, 2007, with an alleged onset date of December 15, 2005. (Tr. 8, 37, 45-48, 82-84). Plaintiff's application was denied initially and on reconsideration. (Tr. 8). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 28, 2008, before ALJ John R. Daughtry. (Tr. 6-31).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact

1

and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2005 through her date last insured of September 30, 2006 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following medically determinable impairments: hypertension and post herpetic neuralgia (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2005, the alleged onset date, through September 30, 2006, the date last insured (20 CFR 404.1520(c)).

(Tr. 34-42).

The Appeals Council denied Plaintiff's request for review on August 3, 2010. (Tr. 1-5). This action was timely filed on October 1, 2010. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff saw Arthur Williams, DO, from approximately 2000 to 2007. (Tr. 156-71). On March 7, 2000, she was treated for hypertension, a lesion under her right eye, and bicipital tendinitis. (Tr. 167). Dr. Williams noted her history of chronic back pain and gave her a prescription for Celebrex. *Id.* In October, Plaintiff noted occasional numbness in her right arm and shoulder, but she had full range of motion. (Tr. 166).

In May 2001, Plaintiff visited Dr. Williams for a follow-up on her hypertension. He noted she was "doing fairly well" on her medication regime. (Tr. 165). She saw Dr. Williams for tick

2

bites in May and June, as well. (Tr. 164-65). In November 2001, Plaintiff had an additional follow-up on her hypertension. She was primarily treated for bronchitis at that visit. (Tr. 163).

In April 2002, Plaintiff saw Dr. Williams for complaints of cough, congestion, runny nose, and drainage. (Tr. 162). Dr. Williams notes Plaintiff continued to smoke despite his advice. *Id*. On November 1, 2002, Plaintiff had a follow-up for her hypertension. (Tr. 161). She described increased anxiety because her grandson was diagnosed with attention-deficit disorder, behavior disorder, and bipolar disorder. *Id*. She also noted stress due to living with her son and family. *Id*. Plaintiff was reportedly in a "pretty good" mood, however, and Dr. Williams prescribed Zoloft. *Id*. In December 2002, Plaintiff had a follow-up appointment for her left leg herpetic neuralgia and depression. (Tr. 160). She stated Zoloft was not helpful, and she wanted something for chronic pain but wanted to avoid narcotics. *Id*. Dr. Williams diagnosed "mild chronic anxiety secondary to family stress." *Id*.

On January 8, 2003, Plaintiff's blood pressure was measured at 142/100 because she had not yet taken her blood pressure medication. (Tr. 159). She complained primarily of depression but noted she feels "basically back to normal" on Tofranil. *Id*. Dr. Williams stated Plaintiff was "overall significantly improved." *Id*. Dr. Williams prescribed Decadron with Depo-Medrol for Plaintiff's chronic leg pain. *Id*.

Plaintiff next saw Dr. Williams on August 12, 2005. Her blood pressure was measured at 169/99 and was not controlled by her medication. (Tr. 158). Dr. Williams encouraged Plaintiff to stop smoking. *Id*. Plaintiff complained of lower back pain and leg pain, as well as post-herpetic neuralgia. *Id*.

On March 28, 2006, Plaintiff returned to Dr. Williams for a follow-up appointment

3

regarding her hypertension. (Tr. 157). Dr. Williams noted Plaintiffs' blood pressure was under fairly good control, but he increased her dosage of Cozaar. *Id*. Plaintiff had no other significant complaints. *Id*.

At an appointment on March 8, 2007, Plaintiff complained of a loss of coordination on her left side and increased back pain. (Tr. 156). She expressed concern about Parkinson's Disease. *Id*.

Plaintiff began seeing Dr. Henderson on April 17, 2007. (Tr. 177). She was described as a heavy long term smoker. *Id*. Plaintiff believed her right eye vision was compromised due to her history of aneurysm. *Id*. She had a history of scoliosis, and shingles left her with intermittent bad pain in her left hip and leg. *Id*. She complained of right foot and hand pain, for which Dr. Henderson could not find a cause. *Id*. He believed she was overmedicated with regard to her hypertension. *Id*.

On May 8, 2007, Dr. Henderson reported Plaintiff had a "dramatic response" to prednisone. (Tr. 175). On prednisone, her left hip and right hand pain were greatly alleviated, and she felt "really good." *Id*. Three days after stopping, there was a recurrence of pain in her left hip and right hand. *Id*.

At an appointment on May 31, 2007, Plaintiff reported calling about her social security disability application. (Tr. 175). Dr. Henderson agreed that Plaintiff probably could not work at her age due to her medical problems, including back pain, scoliosis, and poor night vision. *Id*. She was generally doing well and had not had to resume treatment with prednisone. *Id*.

On June 13, 2007, Plaintiff's blood pressure was high without explanation. (Tr. 174). She had severe hip and leg pain, especially when standing, but prednisone and meloxicam helped. *Id*.

4

Plaintiff noted she was trying to quit smoking. *Id*. Plaintiff called Dr. Henderson's office on June 20, 2007 in the throes of an anxiety attack. (Tr. 173). She had calmed down by the time she came in to see the doctor on June 21. *Id*.

Plaintiff saw Dr. Henderson again on July 11, 2007. (Tr. 203). Plaintiff had x-rays of her back, and Dr. Henderson noted Plaintiff's back "is a wreck with marked scoliosis," and she "probably has some significant spinal stenosis." *Id*.

Dr. Mary Payne, a DDS medical consultant, reviewed Plaintiff's medical records in a report dated August 16, 2007. (Tr. 183-86). Dr. Payne noted that Plaintiff's claim was technically insufficient, given the limited medical evidence prior to her date last insured. *Id*.

A consulting psychologist, Dale Leonard, reviewed Plaintiff's medical records in a Psychiatric Review Technique dated August 21, 2007. (Tr. 188-200). He noted Plaintiff was last treated for depression on January 8, 2003, prior to her date last insured, and there was insufficient evidence prior to her date last insured. *Id*.

At an appointment with Dr. Henderson on November 16, 2007, Plaintiff told Dr. Henderson she believed she may have Parkinson's Disease due to a lack of coordination of the left side of her body and tremor on both sides. (Tr. 204). She was unable to crochet. *Id*. Dr. Henderson scheduled a CT scan of her head. *Id*. The CT scan was normal. (Tr. 204-06).

On February 27, 2008, Plaintiff complained to Dr. Henderson of continued anxiety and tension. (Tr. 202). He noted his belief that she "is just one of those folks that probably will do satisfactory on benzodiazepine." *Id*. Anti-Parkinson's medicine did not seem to help Plaintiff. *Id*. At a follow-up on May 16, 2008, Plaintiff noted pain when she touched the area with postherpetic neuralgia. (Tr. 205). She felt like she needed stronger pain medication but did not

want to use a cream medication because it would hurt. *Id*. She complained of pain in her left lower back sometimes going into her leg. *Id*. Dr. Henderson did not want her to take prednisone if she was not in pain. *Id*. Plaintiff's CT scan showed only some white matter changes, and he referred her to a neurologist. *Id*.

Dr. Henderson completed a Medical Source Statement dated August 6, 2008. (Tr. 213-18). He opined she could lift and/or carry up to 10 pounds occasionally, could sit two hours, stand five minutes, and walk 10 minutes without interruption. *Id*. She could sit for seven hours, stand for one hour, and walk 30 minutes in an 8-hour workday. *Id*. She occasionally needs a cane to ambulate. *Id*. Plaintiff can occasionally operate foot controls and can never perform postural activities. *Id*. She cannot work around unprotected heights, moving mechanical parts, extreme cold/heat, and can only occasionally operate a motor vehicle (during the day) and be around humidity and wetness, pulmonary irritants, and vibrations. *Id*. She is restricted to moderate noise. *Id*. She cannot use public transportation or walk a block at a reasonable pace on rough or uneven surfaces. *Id*. The reason for these restrictions is severe spinal stenosis. *Id*. Because Plaintiff has intermittent spasms in her left hand, she can only occasionally reach, handle, finger, fell, and push/pull with that hand. *Id*. Plaintiff is visually impaired and cannot read ordinary newspaper or book print or determine differences in the shape and color of small objects. *Id*.

At her hearing, Plaintiff testified that she is a high school graduate and has also completed her education to become a massage therapist. (Tr. 12). She was forced to resign from her position at Public Storage in December 2005 because she was unable to perform the physical aspects of the job. (Tr. 14). She attempted to work at two jobs in 2006, and she currently does some part-time work for her landlord. (Tr. 14-15, 21). She also tries to find ways to make money on the

internet. (Tr. 26). Plaintiff draws Social Security because she is retired. (Tr. 15).

Plaintiff arrived at the hearing using a walker and cane, which she later testified was not prescribed by a physician. (Tr. 11). She has blurry vision as a result of a double brain injury in 1991. (Tr. 12). Her impaired vision makes it hard to read, and she drives very little and never at night. (Tr. 13). She stopped crocheting one to two years ago. (Tr. 27).

Plaintiff found out she had scoliosis in about 1990. (Tr. 20). She had an x-ray of her spine ordered by her chiropractor at that time, but the x-ray was not submitted as evidence. (Tr. 15-17). Plaintiff's scoliosis first started causing pain later. (Tr. 20). She needs to change positions approximately every 45 minutes. (Tr. 22-23). Plaintiff does not take pain medications or use any methods to alleviate pain. (Tr. 23-24). She cannot lift more than eight to ten pounds. (Tr. 24).

The Vocational Expert, Jane Brenton, testified that Plaintiff's skills would transfer to sedentary work. (Tr. 23-24).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

In her Motion, Plaintiff alleges six errors committed by the ALJ. First, the ALJ erred by finding that Plaintiff did not have a severe impairment or combination of impairments through her date last insured in accordance with 20 C.F.R. § 404.1521. Second the ALJ erred by failing to consider all the evidence before him. Third, the ALJ did not give proper weight to the opinions of the treating physician in accordance with 20 C.F.R. § 404.1527. Fourth, the ALJ erred in failing to comply with SSR 96-7p and 20 C.F.R. § 404.1529 in evaluating the claimant's subjective limitations. Fifth, the ALJ failed to correctly evaluate Plaintiff's mental conditions in accordance with 20 C.F.R. §§ 404.1520a and 404.1545(c). Sixth, the ALJ erred in relying on the testimony of the vocational expert. Because the Magistrate Judge believes this action should be remanded

based on the first alleged error, only that error has been reviewed.

A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered

8

under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

C. The ALJ Erred in Finding Plaintiff's Impairments were Not Severe

Plaintiff argues that the ALJ should have found she suffered from several severe impairments, including osteoarthritis, hypertension, depression, anxiety, postherpetic neuralgia, diplopia, scoliosis, and spinal stenosis, during the time prior to her DLI, September 30, 2006. The ALJ found Plaintiff had two medically determinable impairments, hypertension and postherpetic neuralgia, but that neither of those was severe, singly or in combination. (Tr. 39). The ALJ found that neither of these impairments or combination of impairments significantly limited Plaintiff's ability to perform basic work-related activities for 12 consecutive months. *Id*.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

As an initial matter, only medical evidence prior to September 30, 2006 is relevant unless subsequent medical evidence "is relevant to the claimant's condition prior to the date last insured." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Here, only Dr. Williams's treatment records are dated prior to Plaintiff's DLI. Dr. Williams treated Plaintiff for, among other ailments, hypertension, tendinitis, chronic back and leg pain, anxiety, post-herpetic neuralgia, and depression.(Tr. 157-67). Dr. Henderson first saw Plaintiff more than six months after her DLI, on April 17, 2007. (Tr. 177). The ALJ considered Dr. Williams's treatment notes and Dr. Henderson's medical assessment in his decision. (Tr. 40-42). He noted that Dr. Henderson's assessment "is based upon the claimant's condition subsequent to September 2006" and "[t]here is no significant evidence to support the existence of [advanced spinal stenosis secondary to degenerative joint disease and scoliosis] for a continuous period of 12 months prior to the claimant's DLI." (Tr. 42).

Pursuant to SSR 85-28, "[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities." "Basic work activities" are defined in 20 C.F.R. § 404.1521(b) as "the abilities and aptitudes necessary to do most jobs." As noted in the Commissioner's brief and in the ALJ's decision, the regulation provides examples of these abilities and aptitudes:

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
2. Capacities for seeing, hearing, and speaking;
3. Understanding, carrying out, and remembering simple instructions;
4. Use of judgment;
5. Responding appropriately to supervision, co-workers, and usual work situations; and
6. Dealing with changes in a routine work setting.

10

20 C.F.R. § 404.1521(b).

The Magistrate Judge believes the ALJ did not properly consider the severity of Plaintiff's impairments, singly or in combination. While the burden is on Plaintiff to prove that her impairments are disabling, the ALJ did not properly consider Dr. Henderson's treatment notes. At her first appointment with Dr. Henderson, Plaintiff complained of a compromised vision in the right eye as a result of aneurysms "several years ago." (Tr. 177). She also noted "a history of scoliosis" and that a case of shingles "several years ago [] left her with some intermittent bad pain in her left hip and leg." *Id*. Plaintiff had also complained to Dr. Williams regarding post-herpetic neuralgia as early as December 2002 (which is noted as a "follow-up" to treatment of that impairment). (Tr. 160). Dr. Henderson's medical source statement was based in part on Plaintiff's back pain, specifically her spinal stenosis, and on her visual impairment. (Tr. 213-18). The ALJ made no mention of Plaintiff's visual impairment in his decision. He also gave only minimal consideration to Dr. Henderson's treatment of Plaintiff for back pain even though Dr. Williams noted Plaintiff had a history of chronic back pain as early as 2000. (Tr. 167). The Magistrate Judge therefore believes this action should be remanded to consider whether Plaintiff's medical impairments were, in fact, severe as of her DLI and, in particular, whether Plaintiff's vision impairment and back pain were severe impairments prior to her DLI.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part** and the action be remanded for rehearing pursuant to 42 U.S.C. § 405(g).

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said

objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

    ENTERED this 16th day of November, 2011.

                       /S/ Joe B. Brown
                       JOE B. BROWN
                       United States Magistrate Judge